(129 So. 137)

**BROWN v. BERRY.**

**SMITH v. BERRY et al.**

Nos. 30072, 30388.

May 5, 1930.

George Thurber, of Shreveport, for appellant Mrs. Hortense Brown.

Cook & Cook, of Shreveport, for appellant J. A. B. Smith.

Lewell C. Butler, of Shreveport, for appellee D. C. Berry.

THOMPSON, J.

In the case first above styled, the plaintiff took a rule on Berry to show cause why a lien recorded against her property for labor and material should not be canceled.

In that suit it was alleged that plaintiff had contracted with Berry to build her residence, that he had completed same, and that she had moved into the house. That she had paid all bills presented to her by Berry either for himself or for others, and that said Berry gave her a receipt acknowledging payment in full.

The defendant denied that he had ever given a receipt to the plaintiff for the amount stated in the recorded lien, and averred that the said amount was still due and owing to him by the plaintiff. He prayed in reconvention for judgment against the plaintiff for $2,600, with legal interest.

J. A. B. Smith, trustee of the bankrupt estate of the Linwood Lumber Company and of the individual partners of said Company, intervened and alleged that Berry was merely a nominal party to the contract for the building of the house for Mrs Brown; that the contract was the contract of the lumber company or of Fuller, one of the partners; and that the use of the name Berry was purely nominal and a simulation.

When the case was called for trial, Smith, trustee, entered a voluntary nonsuit as to his intervention, and after trial judgment was rendered in favor of Berry for the sum of $2,521.64. From that judgment Mrs. Brown has appealed.

She has filed no brief in this court, and we find no note of evidence in the record. There is no alternative but to affirm the judgment.

The question presented in the second case is whether the amount due under the judgment against Mrs. Brown is the property of Berry or an asset of the lumber company or of Fuller.

On the day judgment was rendered in favor of Berry against Mrs. Brown, Smith as trustee, filed this suit against Berry on the same theory made the basis of his intervention in the suit of Brown v. Berry, and he prayed for judgment against Berry, declaring all interest appearing in the name of Berry in connection with the building contract to be petitioner's property in his capacity as trustee.

Mrs. Brown and her husband were joined as defendants with Berry.

After a trial there was judgment rejecting the plaintiff's demand.

There was a mass of testimony introduced on the trial and found in the several volumes

of the transcript, the greater part of which relates to issues involved in other suits brought by the trustee against other parties. The facts however which are directly pertinent to the issue in the instant case are but few and simple.

The Linwood Lumber Company, a copartnership, was a manufacturer and dealer in lumber. It was not a contractor, and during the whole course of its business had never contracted for the construction of any building except for its own purposes.

Berry was a carpenter and a contractor on a small scale.

He was working for the lumber company and had managed to save some building material from jobs he had done for Fuller or for the lumber company, which he contemplated using to build himself a house.

When Mrs. Brown concluded to have a house erected for her own use, she consulted Fuller, and the latter referred her to Berry. A contract was finally entered into between Mrs. Brown and Berry, by which Berry agreed to build the house for $3,200. A permit to build the house was obtained from the proper authority, at the request of Berry. It was understood between Berry and Fuller that the lumber would be advanced to Berry from the lumber yards of the lumber company, and that said company would advance the funds for the pay roll. The company was to be reimbursed by Berry out of the contract price for building the house. Berry entered upon the work himself with the assistance of some laborers and completed the building in accordance with his contract. It is true the written contract between Berry and Mrs. Brown was not actually signed until the building was near completion, but it had been entered into between the parties, and the permit was obtained before any work was begun on the building. Berry got Warner, the bookkeeper of the lumber company, to typewrite the contract and the delay in signing the same was occasioned by the act of Mrs. Brown.

It is shown that Berry made all the contracts with subcontractors, and some of these were paid off by Brown at the instance of Berry. All of these bills were placed by Brown before Berry, and he signed them as paid in full.

Among them was the original building contract, and through error, and clearly unintentional on Berry's part, he signed the contract as paid in full.

Judge Roberts, who tried the case of Brown v. Berry, found that the receipt was signed in error, and promptly rendered judgment in favor of Berry.

In the petition of Mrs. Brown, in the first suit, it is alleged that she made the contract with Berry, and that Berry had completed his work on November 6, 1928, and that she moved into the house.

It is shown that the contract with Berry was made long before there was any thought of bankruptcy proceedings of the lumber company or Fuller either voluntarily or forced, and the first intimation that the contract was not Berry's, but that of the lumber company or Fuller's, was when the intervention was filed by the trustee in Brown v. Berry on February 15, 1929.

After judgment was rendered against Mrs. Brown, she joined with the trustee in his effort to sustain his contention that the contract was the contract of the lumber company or of Fuller and not Berry's. Mrs. Brown and her husband testified that the original contract was made with Fuller, and that it was subsequently changed to Berry. But they are

contradicted by Berry, Fuller, Warner, and practically all of the subcontractors, who obtained their contracts from Berry. Outside of the testimony of Mr. and Mrs. Brown there is nothing to show that the lumber company or Fuller had anything to do with the contract, the employment of laborers, or their payment, further than to furnish the lumber and advance the money for the pay rolls, for all of which they were to be reimbursed by Berry, and part of which was actually repaid and went into the assets of the bankrupts.

There are many other circumstances shown by the record which tend strongly to corroborate the fact that it was Berry's contract alone, but we find it unnecessary to specially refer to them.

The trustee was successful in having the court set aside several transactions made by Fuller just before he was adjudged bankrupt, but those cases can have no particular bearing on the issue in this case. Those transactions may or may not have been fraudulent or simulated, but, if they were simulated, the fact should not operate to the prejudice of Berry who was no party to those transactions.

There is no pretense that Mrs. Brown colluded with Berry to defeat the creditors of Fuller, and, as we have seen, the evidence clearly establishes the good faith of Berry in making the contract with Mrs. Brown.

It was unquestionably Berry's contract as held by the trial judge who happened to be the same judge that set aside the transactions in the other cases at the suit of the trustee.

We can find no sufficient reason in the record before us to take the property away from Berry to whom it rightfully belongs and turn it over to the trustee to be distributed among the creditors he represents, and for which Berry is in no manner bound.

The judgment in each of the cases is affirmed at the cost of appellant.